# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

ANQUAVIOUS SEALS,      :
             :
      Plaintiff,     :
             :
   VS.          :
             :   **1 : 11-CV-99 (WLS)**
Officers MARCUS, BELL, and RANDALL, :
             :
      Defendants.    :

---

## ORDER and RECOMMENDATION

Presently pending in this action brought pursuant to 42 U.S.C. ▪ 1983 is a Motion for Summary Judgment filed by Defendants Marcus and Randall (Doc. 33), as well as Plaintiff's Motion to Compel (Doc. 34), Plaintiff's Motion for Leave to File an Amended Response (Doc. 41), and Defendants Marcus and Randall's Motion to Strike and Dismiss Amended Complaint (Doc. 45).   The Plaintiff filed this action on July 1, 2011 in the Northern District of Georgia, raising allegations of Defendants' deliberate indifference to his safety while he was confined at Autry State Prison.  (Doc. 1).  The case was transferred to this district on July 22, 2011.  (Doc. 5).  On July 27, 2011, the Plaintiff filed a supplement to his Complaint, which was considered by the Court.   (Docs. 11,12).  Plaintiff alleges that while he was confined at Autry State Prison on July 17, 2009, Defendants Marcus, Bell and Randall allowed other inmates to beat him, failing to protect Plaintiff from a known risk of danger.  (Docs. 1, 11).

In his initial and supplemental Complaints, the Plaintiff maintains that on July 17, 2009, he was confined in segregation at Autry State Prison, and was being returned to his cell after having been escorted to the shower.  Plaintiff was handcuffed and escorted by Defendant Marcus.

Plaintiff saw Defendants Bell and Randall standing at an open cell door, from which inmates Brown and Wilkerson approached Plaintiff and began assaulting him.  Plaintiff maintains that the Defendant officers did not call for assistance until the assault was over.   Plaintiff concludes that Defendants Bell and Randall opened the cell door of inmates Brown and Wilkerson and states that Defendant Marcus held the Plaintiff to allow the other inmates to assault Plaintiff.   Plaintiff was later taken to the hospital for treatment.

The Court notes the Suggestion of Death on the record as to Defendant Bell, filed on October 17, 2011.  (Doc. 22).  Inasmuch as more than 90 days have passed since the suggestion of death was entered on the record and no motion of substitution has been filed regarding Defendant Bell, it is the recommendation of the undersigned that Defendant Bell be **DISMISSED** from this action pursuant to Federal Rule of Civil Procedure 25(a)(1).

### *Motion to Compel*

Plaintiff filed a Motion to Compel on March 28, 2012, his second such motion seeking the production of certain documents by the Defendants.  (Doc. 34).  The Court denied Plaintiff's first Motion to Compel by Order dated March 16, 2012, and noted therein that Defendants had responded to Plaintiff's discovery requests, and that Plaintiff had not attempted to serve additional discovery to clarify requests previously objected to by the Defendants.  (Docs. 30, 32). Moreover, the Plaintiff had failed to comply with Local Rule 37, requiring that motions to compel be accompanied by a statement certifying that the movant has in good faith conferred or attempted to confer with the opposing parties to resolve the discovery dispute.   (Doc. 32).

In regard to the pending Motion to Compel, the Plaintiff has not complied with Local Rule 37 of this Court, which provides that such motions "will not be considered unless they contain a statement certifying that movant has in good faith conferred or attempted to confer with the

opposing party in an effort to secure the information without court action." The Court also notes that the Plaintiff has failed to include copies of his discovery requests and the Defendants' responses thereto for the Court's review, and that the discovery period expired herein on or about January 17, 2012, with no requests from the Plaintiff or Defendants for an extension thereof. Further, Plaintiff's first Motion to Compel was not filed until over a month after the discovery period had ended.

In addition to the procedural insufficiencies of Plaintiff's Motion to Compel, consideration of the merits of the Motion to Compel also requires that the motion be denied. The Court again notes that the Defendants indicate they have responded to Plaintiff's discovery requests, including the provision of at least one of the items of discovery at issue in the first motion to compel. (Doc. 31). The Defendants further maintain that no color photographs of the alleged incident underlying this lawsuit exist, the second item of discovery requested by the Plaintiff. *Id.*

The Defendants' response to the Plaintiff's First Motion to Compel notes that the Post Orders document sought by the Plaintiff is not relevant or necessary to Plaintiff's claims herein. In his first Motion to Compel, Plaintiff indicates his desire to confirm prison policy as to escort of restrained inmates and release of inmates into common areas by means of the Post Orders document. (Doc. 30). Defendants do not dispute, and in fact stipulate to, the existence of the policy described by the Plaintiff, dictating that restrained inmates be escorted by two correctional officers and that only one inmate is to be out of his cell in the common area at any given time. (Doc. 31). Defendants further maintain that production of the Post Orders document will compromise prison security. Thus, Plaintiff has been provided with the available, relevant portions of the discovery which he seeks.

Accordingly, finding no basis for granting Plaintiff's Motion to Compel the production of

3

the Post Orders document, and the photographs, which Defendants maintain do not exist, and finding that Plaintiff has failed to follow the established rules of this Court and of federal courts in general in seeking to compel discovery, Plaintiff's Motion to Compel is hereby **DENIED**.

To the extent that the Plaintiff relies on the pending Motion to Compel to delay the Court's ruling on the Defendants Marcus and Randall's Motion for Summary Judgment, and has submitted an affidavit stating that summary judgment is inappropriate without further discovery, the Court finds that Plaintiff has failed to point to specific issues as to which additional discovery is essential.

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure:

[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

In seeking to invoke Rule 56(d), formerly codified as Rule 56(f), "the nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Wallace v. Brownell Pontiac-GMC Company, Inc.*, 703 F.2d 525, 527 (11th Cir. 1983) (internal citations omitted). *See also Reflectone, Inc. v. Farrand Optical Company, Inc.*, 862 F.2d 841, 843-33 (11th Cir. 1989) (Rule 56[(d)] does not create a blanket prohibition on granting summary judgment motions before discovery).

Plaintiff points to photographs and a booklet on administrative segregation as items of

discovery he has not received, although he does not explain how this discovery would enable him to rebut the movants' summary judgment showing.  As previously noted, the Defendants maintain that no color photos of the alleged incident exist.  Moreover, Plaintiff has failed to follow the relevant discovery rules, despite being advised as to these rules and their applicability, in his attempts to obtain the discovery.    Accordingly, the Court finds an inadequate basis upon which to delay the ruling on the pending summary judgment motion under Rule 56(d).

### Motion for Leave to Amend

In a Motion for Leave to amend filed on July 23, 2012, the Plaintiff seeks leave to amend his response to Defendants' Motion for Summary Judgment.  (Doc. 41).  The Court **GRANTS** the Plaintiff's Motion for Leave and considers herein Plaintiff's additional response to Defendants' Motion for Summary Judgment.

### Motion for Summary Judgment

The undersigned notified the Plaintiff of the filing of the Defendants' summary judgment motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the Court's Order.  (Doc. 35).  Plaintiff has filed responses to the Defendants' Motion.  (Docs. 37, 39, 41).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Acourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.@ Fed.R.Civ.P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>       (B) showing that the materials cited do not establish the absence or
>       presence of a genuine dispute, or that an adverse party cannot
>       produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(3). The Defendants have supported their Motion for Summary Judgment with the affidavit of correctional officer Mia Palmer, the affidavits of Defendants Marcus and Randall, and the Plaintiff's deposition testimony. (Docs. 33-3 – 33-6).

The Defendants maintain that Plaintiff's claim that they failed to prevent the attack on Plaintiff by fellow inmates fails because Plaintiff cannot show that either Defendant Marcus or Randall knew that inmates Brown and Wilkerson were a threat to Plaintiff's safety prior to the attack. Furthermore, the Defendants assert that they acted reasonably to deal with the situation once the assault on the Plaintiff began.

It is well settled that "[a] prison official's 'deliberate indifference' to a substantial risk of

6

serious harm to an inmate violates the Eighth Amendment.@ *Farmer v. Brennan*, 511 U.S. 825, 828-829 (1994).  "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  *Id.* at  833; *Murphy v. Turpin*, 159 Fed.Appx. 945, 947 (11th Cir. 2005).  To establish a claim of deliberate indifference, Plaintiff must produce Asufficient evidence of (1) a substantial risk of serious harm; (2) the defendants=deliberate indifference to that risk; and (3) causation.@ *Hale v.Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).  "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at  837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Id.*  "It is not . . . every injury suffered by one prisoner at the hands of another that translates into a constitutional liability."  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005).

### Failure to protect

In his affidavit supporting Defendants' Motion for Summary Judgment, Defendant Marcus testifies that he and Defendant Bell escorted the Plaintiff back to his cell from the shower, and Defendant Randall arrived at the site of the assault after a "code" for inmate fight was called. (Doc. 33-4, ¶¶ 4, 7).  When Defendant Randall arrived on the scene, the assault stopped.  *Id.* at ¶7.  Defendant Marcus testifies that he escorted the Plaintiff from the shower area, holding him by the arm, and that once the assault began, a "code" was called for help and Marcus tried to stop

inmate Brown from attacking Plaintiff by means of verbal commands.  *Id.* at ¶¶ 4, 6. In his
affidavit testimony, Defendant Marcus states that inmate Brown threatened him with a shank-type
instrument.  *Id.* at ¶ 6.  Both Defendant Marcus and Randall testify that Randall and Bell did not
release inmates Brown and Wilkerson from their cells, and that the prison guards were not armed.
*Id.* at ¶¶ 9, 10; Doc. 33-5, ¶¶ 7, 8.

 In response to the Defendants' summary judgment showing, the Plaintiff has submitted his
affidavits and an unsigned statement, wherein he asserts that only Defendant Marcus escorted him
from the shower back to his cell, and that Defendant Randall was already standing by the cells
when the attack started.  (Doc. 37-1, ¶ 2; Doc. 37-2; Doc. 39).   Plaintiff also points to Defendant
Marcus' original statement on the incident and his failure to mention therein any weapon wielded
by the attacking inmates.  (Doc. 39).

 The version of the facts most favorable to the non-movant shows that the Plaintiff was
assaulted by inmates Brown and Wilkerson on July 17, 2009, while Plaintiff was being escorted by
Defendant Marcus back from the shower.  Plaintiff was handcuffed and, as part of the escort, was
held by the arm by Defendant Marcus.  According to the Plaintiff, Defendant Marcus held Plaintiff
until Plaintiff was hit by one of the inmates, although Plaintiff admits that Defendant Marcus was
holding the Plaintiff by the arm as part of the normal escort procedure for a handcuffed inmate.
According to Plaintiff's version of the facts, Defendant Randall was at the cell area when Plaintiff
returned from the shower, and only Defendant Marcus escorted Plaintiff from the shower.

 Defendant Marcus admits that he held Plaintiff by the arm while escorting Plaintiff from
the shower, and that he continued to hold the Plaintiff as the assault by inmates Brown and
Wilkerson began.  In his deposition testimony, the Plaintiff testified as follows:

Q  Now, you said earlier that Officer Marcus held you until you were hit the first time?

A  By Charles Brown.  I said that.

Q  And when you say he held you, what do you mean?

A  Held – held is consist [sic] on a grab about like – I'm saying he held – he – while he was escorting me he had my arm.

Q  Okay.  So that's what I want to understand.  He was already escorting you from the shower?

A  Yeah.  You escort an inmate by holding their arm.  You don't escort no inmate by him just walking by himself.  You've got to have some kind of control of him.

. . .

Q  And as you were walking from the shower and being escorted Officer Marcus was holding you as part of that escort, correct?

A  Yes, sir.

Q  And so what you're saying is he was still holding you when you were hit –

A  Until I was hit.

Q  – when you were hit first by –

A  Charles Brown

Q  -- Charles Brown?  And then at some point Officer Marcus let go?  Is that what you're saying?

A  Yeah.  He –

Q  He let go of you?

A  He let me go after I was hit.

(Doc. 33-6, p. 37, l. 13 - p. 38, l. 25).

Plaintiff alleges that the Defendants knew of the impending attack by Inmates Wilkerson and Brown, and participated in orchestrating the attack. However, Plaintiff provides no further support or proof of this proposition of conspiracy, and such a conclusory allegation cannot defeat a properly supported motion for summary judgment. *Bennett v. Parker*, 898 F.2d 1530, 1533-34 (11th Cir. 1990). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989). In his deposition testimony, the Plaintiff admits that he did not see any officer open the cell door for inmates Brown and Wilkerson, but states that since inmates don't have keys, it had to be the Defendants who opened the cell door. (Doc. 33-6, pp. 26, 27). Without more than his own conjecture, the Plaintiff cannot create a genuine issue of material fact regarding this issue. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value).

Plaintiff does not allege facts indicating that any officer was aware of a substantial risk of serious harm posed to Plaintiff by inmates Brown and/or Wilkerson. In order to establish the Defendants' deliberate indifference to a serious risk of injury, however, the known risk of injury must have been a strong likelihood rather than a mere possibility before an official's failure to act can constitute deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). "We will not allow the advantage of hindsight to determine whether conditions of confinement amounted to cruel and unusual punishment." *Purcell*, 400 F.3d at 1320.

Plaintiff points only to a generalized notice regarding his placement in the general prison population as having put Defendants on notice of possible harm to the Plaintiff. (Doc. 37-1, ¶¶ 3, 4). Plaintiff does not establish that he told any correctional officer of any fears he had regarding

10

inmates Brown or Wilkerson prior to the attack, and admits that he had not had any prior altercations or problems with Wilkerson, and had only exchanged "words" with Brown.  (Doc. 33-6, p. 34, ll. 11-23).   Thus, Plaintiff's allegations that Defendants should have foreseen the attack amount only to a claim for negligence, and a defendant jail official's negligent failure to protect the Plaintiff from a risk of harm will not support a finding of liability under § 1983. *Farmer*, 511 U.S. at 835-39;  *Brown*, 894 F.2d at 1537.  "[B]efore Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature. . . . [A] generalized awareness of risk . . . does not satisfy the subjective awareness requirement."  *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003).

Likewise, the stipulations regarding violations of prison policy only provide a possible basis for a claim of negligence, and such policy violations do not provide a sufficient basis for liability under § 1983.  *Davis v. Scherer*, 468 U.S. 183, 194 (1984) (recognizing that allegation of violation of statutory or administrative provision did not provide the basis for a claim of violation of a constitutional right); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (failure of prison officials to follow their own rules does not establish a constitutional violation); *Vodicka v. Phelps*, 624 F.2d 569, 575 (5th Cir. 1980).

Moreover, the Plaintiff's deposition testimony and response to the summary judgment motion set out the arguably reasonable response taken by the Defendants and others regarding the attack, including Defendant Bell pulling inmate Wilkerson off of Plaintiff, attempts to break up the attack physically and verbally, and calling a "code".  (Doc. 33-6, pp. 20, 31, 32; Doc. 37-2).  It is undisputed that none of the correctional officers was armed at the time of the attack.   "[P]rison

officials ...  may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety'. . . [P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Farmer*, 511 U.S. at 844-45 (internal citations omitted); *see also Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2011)( "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk"). Plaintiff has not rebutted the Defendants' showing that reasonable steps were taken to stop the attack after it had begun.  *See MacKay v. Farnsworth*, 48 F.3d 491 (10th Cir. 1995) (measures taken by prison officials to abate harm, including verbal commands and waiting for additional back-up, were reasonable and evidenced no deliberate indifference on the part of the officials).

**Failure to intervene**

In regard to Plaintiff's claim that the Defendants were deliberately indifferent based on the Defendants' alleged failure to intervene in or stop the altercation earlier between Plaintiff and Inmates Wilkerson and Brown, he has failed to set forth adequate facts to establish such a claim. "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However, in order for liability to attach, the officers must have been in a position to intervene." *Terry v. Bailey*, 376 Fed.Appx. 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  An officer who fails to intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff."  *Glispy v. Raymond*, 2009 WL 2762636 (S.D.Fla, Aug. 28, 2009) (*citing Ensley*, 142

12

F.3d at 1407; *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986)).   The undisputed facts show that Defendant Randall pulled inmate Wilkerson away from the attack, and Defendant Marcus maintains that he verbally called for the inmates to stop.   None of the correctional officers were armed.   Defendant Marcus also maintains, although Plaintiff disputes this fact, that inmate Brown had a weapon with which he threatened Defendant Marcus.

In his deposition testimony, Plaintiff largely abandons his allegations that he was actually assaulted by inmate Wilkerson.   (Doc. 33-6, pp. 31, 44, ll. 7-19).   In regard to inmate Brown, the facts and reasonable inferences therefrom as set out by Plaintiff do not show that the Defendants had the opportunity or capability to intervene in the attack on Plaintiff, as Plaintiff states only that he was being held by Defendant Marcus as part of his escort from the shower, that inmates Brown and Wilkerson began to assault Plaintiff, and that a "code" was then called.   In his deposition testimony, the Plaintiff states that the entire episode lasted three to five minutes or less, that a "code" was called that brought other officers to assist, and that Officers Bell and Randall removed inmates Brown and Wilkerson to their cells.   (Doc. 33-6, pp. 32-33).   It is undisputed that the Defendants were unarmed.   Although Plaintiff disputes Defendant Marcus' contention that inmate Brown had a shank-like instrument, Plaintiff does not refute the fact that Defendant Marcus was unarmed facing inmates in the midst of a physically violent attack.   Regardless of the presence or absence of a weapon in the hands of the attacking inmates, "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence."   *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006).

Plaintiff does not establish that the Defendants were physically able and had a realistic chance to intervene and act in time to protect the Plaintiff earlier than they did.   *See Ledlow v.*

13

*Givens*, 2012 WL 6176471 (11th Cir., Dec. 12, 2012) (summary judgment properly entered against prisoner, when prisoner alleged that officer failed to intervene in inmate assault until another officer arrived, but presented no evidence that officer had the ability to reasonably insert himself between the inmates and stop the assault without additional help).  The Plaintiff has "presented no evidence from which a reasonable jury could find that [the Defendant officers] could have anticipated and then stopped [the inmates' attack on Plaintiff].  Therefore, . . . [the Defendant officers] committed no constitutional violation [in not intervening]."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008).

Accordingly, as the Plaintiff has failed to overcome the Defendants' summary judgment showing that they did not act with deliberate indifference to a serious threat of harm to the Plaintiff, in either failing to protect him from, or intervene in, any harm, it is the Recommendation of the undersigned that the Defendants Marcus and Randall's Motion for Summary Judgment be **GRANTED**.

### *Motion to Strike, or in the alternative to Dismiss, Amended Complaint*

Also pending herein is the Defendants' Motion to Strike, or in the Alternative Dismiss, Plaintiff's Amended Complaint.   (Doc. 45).  On August 13, 2012, the Plaintiff filed an Amended Complaint, wherein he essentially clarifies that his claims are brought against the Defendants in their individual capacities, and attempts to add claims under various constitutional provisions. (Doc. 43).

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure,

> (1) ***Amending as a Matter of Course.***  A party may amend its pleading once as a matter of course within:
> **(A)** 21 days after serving it, or
> **(B)** If the pleading is one to which a responsive pleading is

> required, 21 days after service of a responsive pleading or 21 days
> after service of a motion under rule 12(b), (e), or (f), whichever is
> earlier.
>
> (2) ***Other Amendments.***  In all other cases (other than an
> amendment  of right), a party may amend its pleading only with the
> opposing party's written consent or the court's leave.  The court
> should freely give leave when justice so requires.

As noted by the Defendants, Plaintiff filed this proposed Amended Complaint more than one (1)

year after the filing of his original Complaint, and almost five (5) months after the filing of the

Defendants' Motion for Summary Judgment.  Thus, Plaintiff may not amend his Complaint as of

right, but must seek to add to his Complaint by leave of court.

The decision whether to grant leave to amend a pleading is within the sound discretion of

the district court and is not automatic.  *Nat'l. Service Industries, Inc. v. Vafla Corp*, 694 F.2d

246, 249 (11th Cir.  1982).  Although the decision to grant or deny a motion to amend a complaint

is within the discretion of the court, "a justifying reason must be apparent for denial of a motion to

amend." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993).  The Court may consider "such

factors as 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment [and] futility of the amendment.'" *Foman v. Davis*, 371

U.S. 178, 182 (1962).

The Court finds that Plaintiff proceeded with undue delay in seeking to add new claims,

and that allowing the amendment at this point in the proceedings would prove futile.  *Keith v.

Stewart*, 2006 WL 2298004 (N.D.Ga.) (leave to amend a complaint to add defendant on

deliberate indifference claims denied as futile where motion to amend was filed after defendant

15

filed a summary judgment motion and the court had already found that the named defendants were entitled to entry of summary judgment on deliberate indifference claims).  The Plaintiff waited more than one (1) year after filing his original Complaint, seven (7) months after the taking of his deposition, and almost five (5) months after the Defendants filed a dispositive motion to seek leave to amend.  Moreover, the undersigned has issued a recommendation herein that the Defendants' Motion for Summary Judgment be granted, and thus, it is unlikely that Plaintiff's proposed claims would survive a similar dispositive motion.  *See Martinec v. Party Line Cruise Co*, 2007 WL 3197610 (S.D.Fla.) (leave to amend denied where amended complaint found to contain inadequate allegations to survive a motion to dismiss).  Accordingly, Defendants' Motion to Strike, or in the Alternative Dismiss, Plaintiff's Amended Complaint is hereby **GRANTED**.

### *Conclusion*

Accordingly, it is the recommendation of the undersigned that the Defendants Marcus and Randall's Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. ˙ 636(b)(1), the parties may file written objections to the recommendations issued herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of the recommendations.

**SO ORDERED and RECOMMENDED**, this 25th day of January, 2013.

s/  *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

16